Electronically FILED by Superior Court of California, County of Los Angeles on 04/25/2019 03:41 PM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk
19STCV07896

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

State Farm Mutual Automobile Insurance Company and Does 1 through 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Additional Parties Form is Attached

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>(El nombre y dirección de la corte es:) Stanley Mosk Courthouse | CASE NUMBER:<br>(Número del Caso):<br>19STCV07896 |
|---|---|

111 N. Hill St.
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
The Law Firm of Joseph H. Low IV, 100 Oceangate, 12th Floor, Long Beach, CA 90802 Tel: 562.901.0840

| DATE: 04/25/2019<br>(Fecha) | Sherri R. Carter Executive Officer / Clerk of Court<br>Clerk, by<br>(Secretario) | Veronica Delgadillo | , Deputy<br>(Adjunto) |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): State Farm Mutual Automobile Insurance Company
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other (specify): Business Entity Form Unknown
4. ☐ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

**Exhibit "1"**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Ray, et al v State Farm Mutual Automobile Insurance Company, et al | 19STCV07896 |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (Check only one box. Use a separate page for each type of party.):

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

RICKY RAY, individually and as successor in interest to Cynthia Ray, deceased; MORGAN HOWARD, ALEXIS GRIMM, KOURTNEE GRIMM, and JAEDYNN RAY, a minor, by and through their Guardian ad Litem, RICKY RAY

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**Exhibit "1"**

https://sfecs.opr.statefarm.org/ccs/control/dm/DocumentDetails          5/16/2019

19STCV07896

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Gregory Alarcon

Electronically FILED by Superior Court of California, County of Los Angeles on 03/07/2019 12:51 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk

1   Joseph H. Low IV (SBN 194897)
2   THE LAW FIRM OF JOSEPH H. LOW IV
    100 Oceangate, 12th Floor
3   Long Beach, CA 90802
    Telephone: (562) 901-0840
4   Facsimile:  (562) 901-0841
    joseph@jhllaw.com
5
6   Attorney for Plaintiffs

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA
                        COUNTY OF LOS ANGELES
9

10  RICKY RAY, individually and as successor in       Case No.:
    interest to Cynthia Ray, deceased; MORGAN
11  HOWARD, ALEXIS GRIMM, KOURTNEE          **COMPLAINT FOR BREACH OF**
    GRIMM, and JAEDYNN RAY, a minor, by and  **IMPLIED COVENANT OF GOOD FAITH**
12  through their Guardian ad Litem, RICKY RAY,  **AND FAIR DEALING**

13          Plaintiffs,

14  vs.

15  STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY, and DOES 1
16  through 50,

17
            Defendants.
18

19      Plaintiffs, Ricky Ray, individually and as successor in interest to Cynthia Ray,

20  deceased; Morgan Howard; Alexis Grimm; Kourtnee Grimm; and Jaedynn Ray, a minor, by and

21  through their guardian ad litem, Ricky Ray, (collectively, "Ray Family"), allege:

22                                      I.

23                     **SUMMARY OF THE COMPLAINT**

24      1.  Defendant, State Farm Mutual Automobile Insurance Company (State Farm),

25  breached its implied covenant of good faith and fair dealing with its insured, Jason Trinidad

26  (Trinidad), when it refused the Ray Family's reasonable offer to settle the Ray Family's damage

27  claims within the policy limits in the underlying automobile accident case against Trinidad. An

28  assignment of his first party rights has been given by Trinidad to the Ray Family who bring this

    action as third-party claimants.

                                       1
                COMPLAINT FOR DAMAGES FOR BREACH OF IMPLIED COVENANT
                        OF GOOD FAITH AND FAIR DEALING

**Exhibit "1"**

## II.

### PARTIES

2.   Plaintiff, Ricky Ray, is the widow of Cynthia Ray, deceased. There is no proceeding pending in California for administration of the decedent's estate.  Ricky Ray is the decedent's successor in interest (as defined in Code of Civil Procedure section 377.11), and succeeds to the decedent's interest in this action. No other person has a superior right to commence the action or to be substituted for the decedent in the pending action or proceeding. Ricky Ray has executed a Declaration with decedent's death certificate, pursuant to California Code of Civil Procedure section 377.32, a true and correct copy of which is attached hereto and marked Exhibit A.

3.   Plaintiffs, Morgan Howard, Alexis Grimm, Kourtnee Grimm and Jaedynn Ray, are the natural born children of Cynthia Ray, deceased.

4.   The guardian ad litem of Jaedynn Ray, a minor of the age of 14 years, is her father, Ricky Ray, whose appointment is concurrently submitted with the filing of this complaint.

5.   Defendant, State Farm Mutual Automobile Insurance Company (State Farm), is now and at all times mentioned in this complaint, has been, a corporation authorized to do business as an insurer under the laws of the State of California.

6.   The true names and capacities, whether individual, corporate, associate or otherwise, of defendants, Does 1 through 50, and each of them, are presently unknown to plaintiffs, who therefore sue said defendants by such fictitious names.   Plaintiffs will amend this complaint to state the true names and capacities of such fictitiously named defendants as they become known.

7.   Plaintiffs are informed and believe, and thereon alleges, that each defendant sued by a fictitious name was negligent and/or otherwise legally responsible in some manner, including vicarious liability, for the injuries and damages suffered by plaintiffs.

8.   Plaintiffs are informed and believe, and thereon allege, that at all relevant times, the defendants, and each of them, were, and acted as, the principals, agents, partners, joint venturers, officers, directors, controlling shareholders, subsidiaries, affiliates, parent corporations,

2<br>
COMPLAINT FOR DAMAGES FOR BREACH OF IMPLIED COVENANT<br>
OF GOOD FAITH AND FAIR DEALING

**Exhibit "1"**

1  successors in interest and/or predecessors in interests of some of the other defendants, and

2  authorized, ratified, adopted, approved, controlled, aided and abetted, and knew or should have

3  known about the conduct of other defendants.

### III.

### COMMON ALLEGATIONS

6       9.   On or about June 20, 2014, State Farm issued to Jocelyn Carreon (Carreon), a

7  policy of automobile insurance coverage for the Suzuki motor vehicle owned by Carreon and

8  operated by Trinidad on the date of the underlying automobile accident (Policy).  Trinidad is

9  Carreon's son, a member of the Carreon household, and, as such, is a permissive user of

10 Carreon's Suzuki motor vehicle, defined in the Policy as an insured resident relative (Policy, p.

11 5-6).  The State Farm Policy of insurance bears the Policy number of 296 7536-E13-05A, which

12 was in effect for the period of May 27, 2014, to November 13, 2014 (Policy).  A true and correct

13 copy of this Policy is attached to this complaint and marked Exhibit B.

14      10. Under the terms of insurance Policy number 296 7536-E13-05A, State Farm agreed

15 to indemnify Trinidad and Carreon, up to the amount of $50,000 "... because of bodily injury to

16 others caused by an accident that involves a vehicle for which that insured is provided Liability

17 Coverage by this policy." (Policy, p. 6), and to defend Trinidad and Carreon in any civil action

18 suit seeking such damages.

19      11. On or about August 31, 2014, an automobile accident occurred on Highway 5 north,

20 at or near Santa Clarita, California. Cynthia Ray, a passenger in the Ray Family truck was killed.

21 The Ray Family suffered losses for the wrongful death of Cynthia Ray in the accident.

22      12. On November 17, 2014, the Ray Family, in a letter signed by Ricky Ray, made

23 a demand for settlement of the Underlying Action for the State Farm Policy limits.  The demand

24 was reasonable in light of the probable liability of Trinidad and Carreon for the injuries, harm

25 and wrongful death claims suffered by the Ray Family, and in light of the substantial likelihood

26 that the Ray Family would be awarded damages greatly exceeding the Policy limits.

27      13. On April 20, 2015, the Ray Family, through counsel, sent State Farm a copy of the

28 Ray Family demand letter signed by Ricky Ray.

3
COMPLAINT FOR DAMAGES FOR BREACH OF IMPLIED COVENANT<br>OF GOOD FAITH AND FAIR DEALING

**Exhibit "1"**

14. On April 17, 2015, the Ray Family filed a complaint for damages against Trinidad and Carreon in the Los Angeles Superior Court, bearing action number BC579115 ("Underlying Action"). The complaint alleges that Trinidad and Carreon are liable for negligence and other wrongful conduct in connection with the accident. A true and correct copy of the complaint in the Underlying Action is attached hereto and marked Exhibit C.

15. Trinidad and Carreon were served with the complaint in the Underlying Action on July 15, 2015, and July 29, 2015, respectively. Trinidad and Carreon tendered the defense of the Underlying Action to State Farm, which acknowledged that its Policy covered the Underlying Action and agreed to provide Trinidad and Carreon with a defense.

16. Following its acknowledgment of coverage, State Farm hired counsel to defend Trinidad and Carreon in the Underlying Action.

17. As a result of State Farm's unreasonable refusal to accept the Ray Family's reasonable settlement demand, the Underlying Action proceeded to trial. On February 5, 2018, after a trial by jury, a verdict was given in the amount of $27,500, in favor of the Ray Family and against Trinidad and Carreon, jointly and severally. In addition, the Verdict gave the amount of $2,090,559.61, in favor of the Ray Family and against Trinidad, severally, giving a total verdict in favor of the Ray Family in the amount of $2,118,059.61.

18. On March 6, 2018, State Farm sent correspondence to the Ray Family attorney, refusing to pay the jury's verdict of $2,118,059.61, but stated its intention to pay an amount less than the policy limits of $50,000, on the basis that it settled claims made by other third parties. State Farm's settlement with other third parties was made without notice to the Ray Family and without obtaining an order of the court for a good faith settlement.

19. On April 6, 2018, Judgment was entered in favor of the Ray Family and against Trinidad and Carreon in the amount of $2,118,059.61, plus costs.

20. On May 8, 3018, State Farm paid the Ray Family the sum of $27,500 as and for the joint and several liability of Trinidad and Carreon, and the sum of $20,000 toward the several liability of Trinidad, leaving $2,070,059.61, owed on the Judgment against Trinidad severally.

///

4

COMPLAINT FOR DAMAGES FOR BREACH OF IMPLIED COVENANT<br>OF GOOD FAITH AND FAIR DEALING

**Exhibit "1"**

1     21. On March 31, 2018, Trinidad assigned to the Ray Family, his contractual right to

2 recover from State Farm the judgment entered in the Underlying Action. In making this

3 assignment, Trinidad expressly reserved the right to sue State Farm for any nonassignable

4 damages, including damages for mental and emotional distress and punitive damages.

5                              **IV.**

6                      **CAUSE OF ACTION**

7       **(Breach of Covenant of Good Faith and Fair Dealing)**

8     22. The Ray Family realleges and incorporates by reference the allegations of

9 paragraphs 1 through 21 of this complaint, as set forth above.

10     23. Trinidad has duly performed each and every condition of the insurance Policy

11 issued by State Farm.

12     24. State Farm, at all material times had a duty to act fairly and in good faith to

13 Trinidad in carrying out its responsibilities under its insurance Policy.

14     25. Implicit in State Farm's obligation to act fairly and in good faith is its duty to accept

15 a reasonable settlement offer to protect Trinidad from suffering a judgment exceeding Policy

16 limits.

17     26. Despite its obligation to act fairly and in good faith toward Trinidad, State Farm

18 breached its obligation by failing and refusing to accept the reasonable settlement demand of the

19 Ray Family.

20     27. As a direct and proximate result of defendant's breach, Trinidad has suffered

21 damages in the amount of $2,070,059.61, consisting of the amount by which the judgment in the

22 Underlying Action exceeds the amount paid towards the limit of Policy No. 296 7536-E13-05A.

23     28. The damages suffered by Trinidad, alleged hereinabove, having been assigned to

24 the Ray Family by Trinidad on March 31, 2018, are the damages suffered by, and owed to, the

25 Ray Family, in the amount of $2,070,059.61.

26     WHEREFORE, plaintiffs, the Ray Family, demand judgment for:

27     1. The balance of the judgment rendered in the Underlying Action, in the sum of

28 $2,070,059.61.

5

COMPLAINT FOR DAMAGES FOR BREACH OF IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING

**Exhibit "1"**

2.   Costs of suit;

3.   Other and further relief as the court considers proper.

DATED: March 7, 2019                          THE LAW FIRM OF JOSEPH H. LOW IV



By: _____
Joseph H. Low IV
Attorney for Plaintiffs

6
COMPLAINT FOR DAMAGES FOR BREACH OF IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING

**Exhibit "1"**

# EXHIBIT A

Joseph H. Low IV (SBN 194897)
THE LAW FIRM OF JOSEPH H. LOW IV
100 Oceangate, 12th Floor
Long Beach, CA 90802
Telephone: (562) 901-0840
Facsimile:  (562) 901-0841
joseph@jhllaw.com

Attorney for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

RICKY RAY, individually and as successor in
interest to Cynthia Ray, deceased; MORGAN
HOWARD, ALEXIS GRIMM, KOURTNEE
GRIMM, and JAEDYNN RAY, a minor, by and
through their Guardian ad Litem, RICKY RAY,

              Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and DOES 1
through 50,

              Defendants.

Case No.:

**DECLARATION OF RICKY RAY., JR.
PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE §377.32**

I, RICKY RAY, declare and say as follows:

1.  I, Ricky Ray, am the husband, now widow, of Cynthia Ray, deceased.

2.  Cynthia Ray, deceased, was born on February 15, 1978.

3.  My wife, Cynthia Ray, died on August 31, 2014, in Los Angeles County, California.
Attached hereto is a copy of the death certificate.

4.  No proceeding is now pending in California for administration of the decedent's estate.

5.  The declarant is the decedent's successor in interest (as defined in Code of Civil
Procedure § 377.11) and succeed to the decedent's interest in the action or proceeding,
///

1
DECLARATION OF RICKY RAY PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

**Exhibit "1"**

6.  No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _24_ day of February, 2019, at Bakersfield, California.

_____
RICKY RAY

2
DECLARATION OF RICKY RAY PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

**Exhibit "1"**

## STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

## COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC HEALTH

**CERTIFICATE OF DEATH**

| | | |
|---|---|---|
| CYNTHIA | GAIL | RAY |

02/16/1978 · 36 · F · MARRIED · 08/31/2014 · 1402

HS GRADUATE · CAUCASIAN

HOMEMAKER · OWN HOME

4205 RYDER LANE · BAKERSFIELD · KERN · 93311

RICKY RAY, HUSBAND · 4205 RYDER LANE, BAKERSFIELD, CA 93311

RICKY · LEE · RAY
ROGER · WHITTEAL · CA
DARLA · DUNN · NM

RESIDENCE OF RICKY RAY
CREMATED · 4205 RYDER LANE, BAKERSFIELD CA 93311
NOT EMBALMED
CREMATION OF CALIFORNIA · FD2154 · JEFFREY GUNZENHAUSER, MD · 09/05/2014

FREEWAY · NORTHBOUND I-5, NORTH OF LAKE HUGHES ROAD · CASTAIC
LOS ANGELES

TRAUMATIC INJURIES · IMMED · 2014-06960

NONE

FREEWAY/SHOULDER
AUTO VERSUS PEDESTRIAN
NORTHBOUND I-5, NORTH OF LAKE HUGHES ROAD, CASTAIC, CA 91310

REGINA AUGUSTINE · 09/05/2014 · REGINA AUGUSTINE, DEP. CORONER

This is a true certified copy of the record filed in the County of Los Angeles
Department of Public Health if it bears the Registrar's signature in purple ink.

SEP 1 1 2014
DATE ISSUED

Director of Public Health and Registrar

*00003192 50*

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

**Exhibit "1"**

Print document                                                                    Page 1 of 1

# EXHIBIT B

**Exhibit "1"**

🐄 *StateFarm*

**Certified Policy Record**

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 296 7536-E13-05A including any endorsements, if applicable, for the policy term(s) 05/27/14 to 11/13/14 and insuring JOCELYN CARREON & SOCRATES CABALES of ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ based on available records.

The policy was in effect on the loss date of August 31, 2014.

*Twiana Armstrong-Bryant*
Twiana Armstrong-Bryant
Underwriting Team Manager
Date:      6/8/16

1004516                                    2000 143551 200 03-21-2012

**Exhibit "1"**



900 Old River Road
Bakersfield CA 93311-9501

**DECLARATIONS PAGE**

NAMED INSURED
AT1                          05-3418-1 M        A
CARREON, JOCELYN & CABALES,
SOCRATES

POLICY NUMBER  296 7536-E13-05A
POLICY PERIOD MAY 27 2014 to NOV 13 2014
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1086067002

AGENT
NENITA LAVITORIA INS AGCY INC
32146 ALVARADO BLVD
UNION CITY, CA 94587-4000

PHONE: (510) 429-1730

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.
IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSED.

YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|------|------|-------|------------|-------------------|-------|
| 2005 | SUZUKI | XL-7 | SPORT WG | JS3TY92V754100469 | 99BHAV1A |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person, Each Accident | |
| | $25,000    $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| U | $25,000 | |
| | Uninsured Motor Vehicle Coverage | |
| | Bodily Injury Limits | |
| | Each Person, Each Accident | |
| | $15,000    $30,000 | |
| U1 | Uninsured Motor Vehicle Property Damage Coverage | |

Total premium for MAY 27 2014 to NOV 13 2014                This is not a bill.

IMPORTANT MESSAGES
Replaced policy number 2967536-05.

Your total renewal premium for MAY 13 2014 to NOV 13 2014 is

EXCEPTIONS/POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)
YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9806E, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
1120MD  -  EXCESS COVERAGE FOR PERSONAL VEHICLE SHARING.

Agent:    NENITA LAVITORIA INS AGCY INC
Telephone: (510) 429-1730
Prepared  JUN 20 2014        3418-B2B

See Reverse Side

**Exhibit "1"**

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaukel*
Secretary

*Edward B. Rust Jr.*
President

Important...

California law requires us to provide you with information for filing complaints with the State Insurance Department regarding the coverage and service provided under this policy.

Complaints should be filed only after you and State Farm® or your agent or other company representative have failed to reach a satisfactory agreement on a problem.

Please forward such complaints to:     California Department of Insurance
                                        Consumer Services Division
                                        300 South Spring Street
                                        Los Angeles, CA 90013

                                        Or call toll free
                                        1-800-927-HELP (4357)

## NOTICE

We are required to furnish you with the following information:

1. An automobile liability insurance company may cancel a policy before the end of the current policy period for reasons described in the provision titled **Cancellation** which is located in the General Terms section of your policy (refer to the Contents in the beginning of your policy for the page number).

2. An automobile liability insurance company may increase the premium or refuse to renew the policy for any of the following reasons:

   a. Accident involvement by an insured, and whether an insured is at fault in the accident.

   b. A change in, or an addition of, an insured vehicle.

   c. A change in, or addition of, an insured under the policy.

   d. A change in the location of garaging of an insured vehicle.

   e. A change in the use of the insured vehicle.

   f. Convictions for violating any provision of the Vehicle Code or the Penal Code relating to the operation of a motor vehicle.

   g. The payment made by an insurer due to a claim filed by an insured or a third party.

An automobile liability insurance company may increase the premium or refuse to renew the policy for reasons that are not listed above but which are lawful and not unfairly discriminatory.

cmb1
810

**Exhibit "1"**



Please read the policy carefully. If there is an
accident, contact your State Farm agent or one
of our Claim Offices at once. (See "INSURED'S
DUTIES" in this policy booklet.)

**WARNING**
Unless you have automobile insurance written by
a Mexican insurance company, you may spend
many hours or days in jail, if you have an ac-
cident in Mexico. Insurance coverage should
be secured from a company licensed under the
laws of Mexico to write such insurance in order
to avoid complications and some other penal-
ties possible under the laws of Mexico, including
the possible impoundment of your automobile.

State Farm®
**Car Policy**
Booklet

**California**
Policy Form 9805B

**Exhibit "1"**

# CONTENTS

THIS POLICY ......................................................... 3

DEFINITIONS ......................................................... 4

LIABILITY COVERAGE .......................................... 6

Additional Definition ............................................. 6
Insuring Agreement ............................................... 6
Supplementary Payments ...................................... 6
Limits ................................................................... 7
Nonduplication ..................................................... 7
Exclusions ............................................................ 7
If Other Liability Coverage Applies ....................... 8
Required Out-of-State Liability Coverage .............. 9
Financial Responsibility Certification .................... 9

MEDICAL PAYMENTS COVERAGE ....................... 9

Additional Definitions ........................................... 9
Insuring Agreement ............................................. 10
Determining Medical Expenses ........................... 10
Arbitration ......................................................... 10
Limit .................................................................. 11
Nonduplication ................................................... 11
Exclusions .......................................................... 11
If Other Medical Payments Coverage or
Similar Vehicle Insurance Applies ..................... 12
Our Payment Options .......................................... 13

UNINSURED MOTOR VEHICLE
COVERAGE ....................................................... 13

Additional Definitions ......................................... 13
Insuring Agreement ............................................. 14
Deciding Fault and Amount ................................. 14
Limits ................................................................. 14
Nonduplication ................................................... 15
Exclusions .......................................................... 15
If Other Uninsured Motor Vehicle Coverage
Applies ............................................................ 16
Our Payment Options .......................................... 16

UNINSURED MOTOR VEHICLE PROPERTY
DAMAGE COVERAGE ....................................... 16

Additional Definitions ......................................... 16
Insuring Agreement ............................................. 17

Deciding Fault and Amount ................................. 17
Limits and Loss Settlement ................................. 17
Exclusions .......................................................... 18
If Other Uninsured Motor Vehicle Property
Damage Coverage Applies ................................ 18
Our Payment Options .......................................... 18

PHYSICAL DAMAGE COVERAGES ....................... 18

Additional Definitions ......................................... 18
Insuring Agreements ........................................... 19
Supplementary Payments -- Comprehensive
Coverage and Collision Coverage ..................... 20
Limits and Loss Settlement -- Comprehensive
Coverage and Collision Coverage ..................... 20
Limits -- Car Rental and Travel Expenses
Coverage .......................................................... 22
Nonduplication ................................................... 22
Exclusions .......................................................... 22
If Other Physical Damage Coverage or Similar
Coverage Applies ............................................. 24
Financed Vehicle ................................................ 24
Our Payment Options .......................................... 24

DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE .............................. 25

Additional Definition ........................................... 25
Insuring Agreement ............................................. 25
Benefit ............................................................... 25
Exclusions -- Death, Dismemberment and
Loss of Sight Coverage and Loss of Earnings
Coverage .......................................................... 26
Our Payment Options -- Death, Dismemberment
and Loss of Sight Coverage and Loss of
Earnings Coverage ........................................... 27

LOSS OF EARNINGS COVERAGE ......................... 25

Additional Definitions ......................................... 26
Insuring Agreement ............................................. 26
Limit .................................................................. 26
Exclusions -- Death, Dismemberment and
Loss of Sight Coverage and Loss of Earnings
Coverage .......................................................... 26
Our Payment Options -- Death, Dismemberment
and Loss of Sight Coverage and Loss of
Earnings Coverage ........................................... 27

2
9805B

**Exhibit "1"**

INSURED'S DUTIES .................................... 27
    Notice to Us of an Accident or Loss ......... 27
    Notice to Us of a Claim or Lawsuit ........... 27
    Insured's Duty to Cooperate With Us ....... 27
    Questioning Under Oath ............................ 27
    Other Duties Under the Physical
    Damage Coverages ..................................... 28
    Other Duties Under Uninsured Motor Vehicle
    Property Damage Coverage ......................... 28
    Other Duties Under Medical Payments
    Coverage, Uninsured Motor Vehicle, Coverage,
    Death, Dismemberment and Loss of Sight
    Coverage; and Loss of Earnings Coverage ..... 28
GENERAL TERMS .................................... 29
    When Coverage Applies ............................. 29

Where Coverage Applies ............................. 29
Limited Coverage in Mexico ......................... 29
Newly Owned or Newly Leased Car ............... 30
Changes to This Policy ................................. 30
Premium .................................................... 30
Renewal .................................................... 31
Nonrenewal ............................................... 31
Cancellation ............................................... 31
Assignment ................................................ 32
Bankruptcy or Insolvency of the Insured ........ 32
Concealment or Fraud ................................. 32
Our Right to Recover Our Payments ............. 32
Legal Action Against Us .............................. 32
Choice of Law ............................................ 33
Severability ............................................... 33

## THIS POLICY

1. This policy consists of:

    a. the most recently issued Declarations Page;

    b. the policy booklet version shown on that Declarations Page; and

    c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

    a. us; and

    b. any of our agents.

3. We agree to provide insurance according to the terms of this policy:

    a. based on payment of the required premium when due for the coverages chosen; and

    b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

        (1) The named insured shown on the Declarations Page is the sole owner of your car.

        (2) Neither you nor any member of your household has, within the past three years, had either:

            (a) a license to drive; or

            (b) a vehicle registration suspended, revoked, or refused.

        (3) Your car is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

    a. the statements in 3.b. above are made by such named insured or applicant and are true; and

    b. we provide this insurance on the basis those statements are true.

5. Your purchase of this policy may allow:

    a. you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the State Farm Companies, subject to their applicable eligibility rules; or

    b. the premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the State Farm Companies or by an organization that has entered into an agreement or contract with the State Farm Companies. The State Farm Companies do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

3
9805B

**Exhibit "1"**

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1.  Any vehicle while located for use as a dwelling or other premises; or

2.  A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer.

*Domestic Partner* means a *person* who is in a registered domestic partnership as qualified by California law.

*Fungi* means any type or form of fungus or fungi and includes:

1.  Mold;

2.  Mildew; and

3.  Any of the following that are produced or released by fungi:

    a.  Mycotoxins;

    b.  Spores;

    c.  Scents; or

    d.  Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1.  the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2.  the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1.  is *owned by*:

    a.  *you*;

    b.  any *resident relative*;

    c.  any other *person* who resides primarily in *your* household; or

    d.  an employer of any *person* described in a., b., or c. above; nor

2.  has been operated by, rented by, or in the possession of:

    a.  *you*; or

    b.  any *resident relative*

during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1.  owned by;

2.  registered to; or

3.  leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1.  a motorized vehicle; or

2.  a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Personal Vehicle Sharing* means the use of a *private passenger car* by persons other than the vehicle's owner in connection with a *personal vehicle sharing program* or any similar program.

*Personal Vehicle Sharing Program* means a legal entity qualified to do business in the State of California and engaged in the business of facilitating the sharing of *private passenger cars* for non-commercial use by individuals within the state.

*Private Passenger Car* means:

1.  a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2.  a pickup truck, van, minivan, or sport utility vehicle:

    a.  while not used for:

4
9805B

**Exhibit "1"**

(1) wholesale; or

(2) retail

pickup or delivery; and

b.  that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means, except in Uninsured Motor Vehicle Coverage, a *person*, other than *you*, who resides with the first *person* shown as a named insured on the Declarations Page and who is:

1.  related to that named insured or his or her spouse or *domestic partner* by blood, marriage, domestic partnership as qualified by California law, or adoption, including an unemancipated child of either who is away at school if such child:

    a.  otherwise maintains his or her residence with that named insured; and

    b.  is neither married nor a *domestic partner*; or

2.  a ward or a foster child of that named insured, his or her spouse or *domestic partner*, or a *person* described in 1. above.

See **Additional Definitions** in Uninsured Motor Vehicle Coverage for the definition used in that coverage.

*State Farm Companies* means one or more of the following:

1.  State Farm Mutual Automobile Insurance Company;

2.  State Farm Fire and Casualty Company; and

3.  Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1.  replaces *your car* for a short time while *your car* is out of use due to its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  damage; or

    e.  theft; and

2.  neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1.  a trailer:

    a.  designed to be pulled by a *private passenger car*;

    b.  not designed to carry *persons*; and

    c.  while not used as premises for office, store, or display purposes; or

2.  a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means, except in Uninsured Motor Vehicle Coverage, the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse or *domestic partner* of the first *person* shown as a named insured if the spouse or *domestic partner* resides with that named insured.

See **Additional Definitions** in Uninsured Motor Vehicle Coverage for the definition used in that coverage.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1.  the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2.  the date this policy is no longer in force; or

3.  the date *you* no longer own or lease the *car* being replaced.

5
9805B

# LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

## Additional Definition

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse or *domestic partner* who resides with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse or *domestic partner*;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* permission, express or implied, and within the scope of that permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

## Insuring Agreement

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which *Insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *Insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

## Supplementary Payments

*We* will pay, in addition to the damages described in the Insuring Agreement of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *Insured* who is sued for such damages. *We* will not defend any lawsuit or pay attorney fees incurred:

   a. after *we* deposit in court or pay:

      (1) the amount due under the Insuring Agreement of this policy's Liability Coverage; or

      (2) the limit of this coverage; or

   b. if there is no coverage under this policy;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

3. Interest the *Insured* is legally liable to pay on damages payable under the Insuring Agreement of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

6
9805B

**Exhibit "1"**

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

     (1) an arbitration;

     (2) a mediation; or

     (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

1. The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

2. The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

3. The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident." The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

4. These Liability Coverage limits shall be reduced by payments for *bodily injury* damages made to or for the *Insured* under the Uninsured Motor Vehicle Coverage of this policy.

5. These Liability Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES, OR DIRECTS ANOTHER *PERSON* TO INTENTIONALLY CAUSE, *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO ANY *INSURED* OR FOR *BODILY INJURY* TO ANY *INSURED* WHENEVER THE ULTIMATE BENEFITS OF THAT INDEMNIFICATION ACCRUE DIRECTLY OR INDIRECTLY TO AN *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF AND IN THE COURSE OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

7
9805B

**Exhibit "1"**

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

10. FOR DAMAGE TO PROPERTY, INCLUDING A MOTOR VEHICLE OPERATED BY ANY *INSURED*, WHILE IT IS:

a. *OWNED BY*;

b. RENTED TO;

c. IN THE CHARGE OF; OR

d. TRANSPORTED BY

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF *PUBLIC ROADS* AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING

8
9805B

CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

**Exhibit "1"**

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the

*State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:

a. while occupying:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*;

(4) a *non-owned car*; or

(5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while occupying:

9
9805B

**Exhibit "1"**

a.  *your car;*

b.  a *newly acquired car;*

c.  a *temporary substitute car;* or

d.  a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent.

*Medical Expenses* mean *reasonable expenses* for *medical services.*

*Medical Services* mean treatments, procedures, products, and other services that are:

1.  necessary to achieve maximum medical improvement for the *bodily injury;*

2.  rendered by a healthcare provider:

    a.  who is licensed as a healthcare provider if a license is required by law; and

    b.  within the legally authorized scope of that healthcare provider's practice;

3.  commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury;*

4.  primarily designed to serve a medical purpose;

5.  not experimental; and

6.  not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1.  The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2.  The fee specified in any fee schedule:

    a.  applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

    b.  as prescribed or authorized by the law of the state where *medical services* are provided;

3.  The fees agreed to by both the *insured's* healthcare provider and us; or

4.  The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1.  *medical expenses* that an *insured* is legally obligated to pay because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident if:

    a.  that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

    b.  such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2.  funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1.  obtain and use;

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred charges are *medical expenses;*

2.  use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a motor vehicle accident; and

    b.  the expenses incurred are *medical expenses;* and

3.  enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1.  If there is a disagreement as to whether incurred charges are *medical expenses,* then the disagreement will be resolved by arbitration upon written request of the *insured* or *us.*

2.  The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

    The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

    Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

10
9805B

3. The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

   a. *us*;
   b. the *insured*;
   c. any assignee of the *insured*; and
   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or
   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;
    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

11
9805B

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM' OR FROM ANY OTHER WEAPON;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; or

15. WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical* expenses or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the

*State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical* expenses and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

12
9805B

**Exhibit "1"**

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*; or

   c. a *temporary substitute car*.

   Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a public or livery conveyance is not an *insured*; or

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Resident Relative* means a *person*, other than *you*, who resides with either a named insured shown on the Declarations Page or the spouse or *domestic partner* of that named insured, and who is:

1. related to that named insured or his or her spouse or *domestic partner* by blood, marriage,

domestic partnership as qualified by California law, or adoption, including an unemancipated child of either who is away at school and is neither married nor a *domestic partner*; or

2. a ward or a foster child of that named insured, his or her spouse or *domestic partner*, or a *person* described in 1. above.

*Underinsured Motor Vehicle* means a land motor vehicle, the ownership, maintenance, or use of which is insured, self-insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law, but such liability coverage limits are less than the Uninsured Motor Vehicle Coverage limits of this policy.

*Uninsured Motor Vehicle* means:

1. a land motor vehicle the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or

   b. insured or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of California; or

      (2) the insuring company:

13
9805B

**Exhibit "1"**

(a) denies that its policy provides liability coverage for compensatory damages that result from the accident;

(b) refused to admit coverage except conditionally or with reservation; or

(c) is or becomes insolvent, within one year of the accident;

2. an *underinsured motor vehicle*; or

3. a "hit-and-run" land motor vehicle whose owner or operator remains unknown and which has physical contact with:

   a. an *insured*; or

   b. the vehicle an *insured* is *occupying*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by* or operated by *you*, any *resident relative*, or any resident of *your* household unless:

   a. the vehicle strikes an *insured*;

   b. the vehicle is *owned by* the injured *insured*; and

   c. the vehicle is being operated, or caused to be operated by a *person* without the injured *Insured's* consent in connection with criminal activity that has been documented in a police report and that the injured *Insured* is not a party to such activity;

3. self-insured within the meaning of the motor vehicle financial responsibility law of the state in which the motor vehicle is registered;

4. *owned by* the United States of America, Canada, a state or political subdivision of any of those governments, or an agency of any of the foregoing;

5. that is any equipment or vehicle designed or modified for use primarily off public roads except while actually upon public roads; or

6. while located for use as a residence or premises and not as a vehicle.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse or *domestic partner* of that named insured.

**Insuring Agreement**

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*. The *bodily injury* must be:

1. sustained by an *insured*; and

2. caused by an accident arising out of the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

If the damages are caused by an *underinsured motor vehicle*, then *we* will pay only if the full amount of all available limits of all motor vehicle bodily injury liability insurance, self-insurance, or cash deposits or bonds posted to satisfy a financial responsibility law that apply to the *insured's bodily injury* have been exhausted by payment of judgements or settlements, and proof of the payment is submitted to *us*.

**Deciding Fault and Amount**

Two questions must be decided by agreement between the *insured* and *us*:

1. Is the *insured* legally entitled to collect damages from the owner or operator of the *uninsured motor vehicle*; and

2. If so, in what amount?

If there is no agreement, upon written request of the *insured* or *us*, these questions shall be decided by arbitration as provided by section 11580.2 of the California Insurance Code. The *Insured's* written request must be sent to *us* by certified mail, return receipt requested. The arbitration judgment may be filed in any court having jurisdiction. Both parties will share the cost of arbitration equally. Attorney fees and fees for medical and other expert witnesses are not considered costs of arbitration.

*We* are not bound by any judgment against any *person* or organization obtained without *our* written consent.

Arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

2. If the damages are caused by an *uninsured motor vehicle* other than an *underinsured motor vehicle*, then the limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*. The limit shown under

14
9805B

**Exhibit "1"**

"Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident.

3. If the damages are caused by an *underinsured motor vehicle*, then:

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(1) the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

(2) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for *bodily injury* made to all *insureds* by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury*.

4. The limits described in items 2. and 3. above shall be reduced by:

a. payments for *bodily injury* damages made to or for the *insured* under the Liability Coverage of this policy; and

b. the amount paid and the present value of all amounts payable to an *insured*, his or her executor, administrator, heirs, or legal representative under any workers compensation law, exclusive of non-occupational disability benefits.

5. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages that have already been paid as expenses under Medical Payments Coverage of this policy or the medical payments coverage of any other policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH OR PROSECUTES TO JUDGMENT ANY ACTION AGAINST ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS. This exclusion does not apply to a settlement or a judgment for damages resulting from *bodily injury* caused by an *underinsured motor vehicle*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE, OTHER THAN *YOUR CAR* OR *A NEWLY ACQUIRED CAR*, THAT IS OWNED BY, OR LEASED UNDER A WRITTEN CONTRACT FOR A PERIOD OF SIX MONTHS OR LONGER, TO:

a. *YOU*; OR

b. ANY *RESIDENT RELATIVE*. This exclusion (2.b.) does not apply to *you* while *occupying* a motor vehicle that is not owned by or leased to any *person* included in the definition of *you*;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM OR FROM ANY OTHER WEAPON;

4. TO THE EXTENT IT BENEFITS DIRECTLY OR INDIRECTLY:

a. ANY WORKERS' COMPENSATION CARRIER; OR

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW;

5. TO THE EXTENT IT BENEFITS DIRECTLY THE UNITED STATES, ANY STATE, OR ANY POLITICAL SUBDIVISION THEREOF;

6. FOR AN *INSURED* WHO IS *OCCUPYING YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*;

7. FOR AN *INSURED* WHILE *OCCUPYING* A MOTOR VEHICLE RENTED OR LEASED TO THAT *INSURED* FOR PUBLIC OR LIVERY PURPOSES;

15
9805B

**Exhibit "1"**

8. FOR AN *INSURED* WHILE *OCCUPYING* A MOTOR VEHICLE OTHER THAN *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF THE OWNER HAS UNINSURED MOTOR VEHICLE COVERAGE OR UNDERINSURED MOTOR VEHICLE COVERAGE ON THAT MOTOR VEHICLE WITH LIMITS EQUAL TO OR GREATER THAN THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS PROVIDED BY THIS POLICY;

9. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

10. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

11. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. Regardless of the number of vehicles involved, whether insured or not, *persons* covered, claims made, premiums paid, or the number of premiums shown on the policy, in no event shall the limits of coverage for two or more motor vehicles, or two or more policies be added together, combined, or stacked to determine the limit of uninsured motor vehicle coverage available to an *insured*.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

If the Uninsured Motor Vehicle Coverage provided by this policy and the uninsured motor vehicle coverage provided by one or more other sources both apply as primary coverage for the same accident, then *we* will pay the proportion of damages payable as primary that the applicable limit of this policy bears to the sum of that limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

If the Uninsured Motor Vehicle Coverage provided by this policy and the uninsured motor vehicle coverage provided by one or more other sources both apply as excess coverage for the same accident, then *we* will pay the proportion of damages payable as excess that the applicable limit of this policy bears to the sum of that limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE PROPERTY DAMAGE COVERAGE

This policy provides Uninsured Motor Vehicle Property Damage Coverage if "U1" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Property Damage* means damage to *your car* or a *newly acquired car* and does not include loss of use of such vehicle.

*Uninsured Motor Vehicle* means a land motor vehicle which involves actual, direct physical contact with *your car* or a *newly acquired car* and the ownership, maintenance, and use of which is:

1. not insured or bonded for property damage liability at the time of the accident; or

2. insured or bonded for property damage liability at the time of the accident; but

    a. the limits are less than required by the financial responsibility act of California; or

    b. the insuring company:

        (1) denies that its policy provides liability coverage for *property damage* that results from the accident;

16
9805B

**Exhibit "1"**

(2) refused to admit coverage except conditionally or with reservation; or

(3) is or becomes insolvent within one year of the accident.

A land motor vehicle is an **uninsured motor vehicle** only if the owner or operator of the vehicle is identified, or if the vehicle is identified by its license number.

**Uninsured Motor Vehicle** does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided **Liability Coverage** by this policy;

2. owned by or operated by **you, any resident relative**, or any resident of **your** household;

3. self-insured within the meaning of the financial responsibility provisions of the state in which the motor vehicle is registered;

4. owned by the United States of America, Canada, a state or political subdivision of any government, or an agency of any of the foregoing;

5. that is insured or bonded with limits equal to or greater than the minimum property damage liability limits required by the financial responsibility act of California;

6. that is a farm-type tractor or equipment designed for use principally off public roads except while actually upon public roads; or

7. operated on rails or crawler treads, or while located for use as a residence for premises and not as a vehicle.

**Insuring Agreement**

*We* will pay damages for *property damage you* are legally entitled to recover from the owner or operator of an **uninsured motor vehicle**. The *property damage* must be caused by an accident arising out of the operation, maintenance, or use of an **uninsured motor vehicle**.

**Deciding Fault and Amount**

Two questions must be decided by agreement between *you* and *us*:

1. Are *you* legally entitled to collect damages for *property damage* from the owner or operator of the **uninsured motor vehicle**; and

2. If so, in what amount?

If there is no agreement, upon written request of *you* or *us*, these questions shall be decided by arbitration as provided by section 11580.26 of the California Insurance Code. The arbitration judgment may be filed in any court having jurisdiction. Both parties will share the cost of arbitration equally.

17
9805B

Attorney fees and fees for expert witnesses are not considered costs of arbitration.

*We* are not bound by any judgment against any *person* or organization obtained without *our* written consent.

**Limits and Loss Settlement**

1. The most *we* will pay for all *property damage* as the result of one accident is:

   a. the amount of any collision coverage deductible applicable to *property damage* up to a maximum of $3,500; or

   b. $3,500 if there is no collision coverage provided by this policy or any other policy that is applicable to the *property damage*. Subject to the limit, *we* have the right to settle with *you* for the *property damage* in one of the following ways:

      (1) Pay the cost to repair *your car* or the *newly acquired car*.

         *We* have the right to choose one of the following to determine the cost to repair the *car*:

         (a) The cost agreed to by both *you* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to the prevailing competitive price.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *car* to its pre-loss condition.

      (2) Pay the actual cash value of *your car* or the *newly acquired car*. The damaged *car* must be given to *us* in exchange for *our* payment, unless *we* agree that *you* may keep it. If *you* keep the *car*, then *our* payment will be reduced by the value of the *car* after the loss.

2. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

b.  claims made;

c.  vehicles insured; or

d.  vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE:

1. IF *YOU*, WITHOUT *OUR* WRITTEN CONSENT, SETTLE WITH OR PROSECUTE TO JUDGMENT ANY ACTION AGAINST ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *PROPERTY DAMAGE* AND THEREBY IMPAIR OUR RIGHT TO RECOVER OUR PAYMENTS; AND

2. FOR *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

**If Other Uninsured Motor Vehicle Property Damage Coverage Applies**

If other uninsured motor vehicle property damage coverage applies to *property damage*, we are liable only for *our* share. *Our* share is that percent of the damages that the limit of this coverage bears to the sum of such limit and the limits of all similar coverage that applies to the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. *You*;

2. The repairer; or

3. A creditor shown on the Declarations Page, to the extent of its interest.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

a.  being driven by an *insured*; or

b.  in the custody of an *insured* if at the time of the *loss* it is:

(1) not being driven; or

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

18
9805B

**Exhibit "1"**

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:
   a. an *insured*;
   b. any other *person* who resides primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:
   a. an *insured*;
   b. any other *person* who resides primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:
   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and
   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:
         (a) starts on the date *you* report the theft to *us*; and
         (b) ends on the earliest of:
            (i) the date the vehicle is returned to *your* possession in a drivable condition;
            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

      (2) during the period that:
         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and
         (b) ends on the date the vehicle is repaired.

      These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:
   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;
   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;
   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;
   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and
   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business*, a *car* rental business, or a *car* leasing business while *your car* or a *newly acquired car* is:

      (1) not drivable; or
      (2) being repaired

      as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

19
9805B

**Exhibit "1"**

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a result of the *loss*; or

    (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been repaired or replaced;

    (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

    (c) five days after *we* offer to pay for the *loss* if the vehicle is:

       (i) a total loss as determined by *us*; or

       (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

**b.  Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

    (a) starts after the *loss* occurs; and

    (b) ends on the earlier of:

       (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

       (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

**c.  Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a car rented from a *car business*, a *car* rental business, or a *car* leasing business.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

    a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

    b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

    a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

    b. any one repair facility chosen by the owner of the *covered vehicle*, and we determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

20
9805B

**Exhibit "1"**

a.  Pay the cost to repair the *covered vehicle* minus any applicable deductible.

   (1)  *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

      (a)  The cost agreed to by both the owner of the *covered vehicle* and *us*;

      (b)  A bid or repair estimate approved by *us*; or

      (c)  A repair estimate that is written based upon or adjusted to:

         (i)  the prevailing competitive price;

         (ii)  the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

         (iii)  a combination of (i) and (ii) above.

      The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*.  If asked, *we* will identify those facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

      *You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

      *You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

   (2)  The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

   (3)  If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

   (4)  If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b.  Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

   (1)  The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

      (a)  The owner and *we* will each select a competent appraiser.

      (b)  The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

      (c)  Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

      (d)  The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

      (e)  A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

      (f)  *We* do not waive any of *our* rights by submitting to an appraisal.

   (2)  The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless the owner chooses to keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the loss; or

c.  Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

21
9805B

**Exhibit "1"**

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

    The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

    a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

        (1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

        (2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

    b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

    The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

    The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

    a. INTENTIONALLY DAMAGED; OR

    b. STOLEN

    BY, OR AT THE DIRECTION OF AN *INSURED*. This exclusion does not apply to the extent of the ownership interest of an *insured* who had no involvement in causing the *loss*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

    a. THEFT;

    b. CONVERSION;

    c. EMBEZZLEMENT; OR

    d. SECRETION

    BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED:

    a. SALES AGREEMENT; OR

    b. CONSIGNMENT AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

22
9805B

**Exhibit "1"**

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

   a. LIEN AGREEMENT;

   b. RENTAL AGREEMENT;

   c. LEASE AGREEMENT; OR

   d. SALES AGREEMENT

   NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

   a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*, A *CAR* RENTAL BUSINESS, OR A *CAR* LEASING BUSINESS; OR

   b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*, A *CAR* RENTAL BUSINESS, OR A *CAR* LEASING BUSINESS. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

   a. FAILS OR IS DEFECTIVE; OR

   b. IS DAMAGED AS A DIRECT RESULT OF:

    (1) WEAR AND TEAR;

    (2) FREEZING; OR

    (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

   OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

   a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

   b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then we will pay the cost that we would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

   a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

   b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

   a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

   b. *OWNED* BY AN *INSURED*; AND

   c. NOT SHOWN ON THE DECLARATIONS PAGE;

19. ANY *COVERED VEHICLE* WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; or

20. *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WHILE USED IN *PERSONAL VEHICLE SHARING*.

23
9805B

**Exhibit "1"**

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of

the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least:

a. 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor if the policy is nonrenewed or the cancellation is for non-payment of premium; or

b. 20 days after the date *we* mail or electronically transmit a notice of the termination to the creditor if the cancellation is for any reason other than nonpayment of premium.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle not owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

24
9805B

**Exhibit "1"**